S02A1580. HEAD v. THE STATE.
(575 SE2d 883)

SEARS, Presiding Justice.

Alexander Napoleon Head appeals his convictions for the murder, kidnapping and molestation of his eight-year-old neighbor,[1]

---

[3] Id.

[1] The crimes occurred on April 15, 1997, and appellant was indicted on May 20, 1997. After appellant's first trial ended with the declaration of a mistrial, a second trial was held on June 1-11, 1998. Appellant was found guilty on all charges. He was sentenced to life in prison for malice murder; a consecutive term of life for kidnapping with bodily injury; two twenty-year terms for two counts of child molestation, to run consecutively to the other terms but concurrent to each other; and twenty consecutive years for kidnapping. Two felony murder convictions were merged into the malice murder conviction by operation of law. Appellant's new trial motion was filed on July 8, 1998, amended on January 31, 2001, and

claiming that numerous errors occurred during the course of his trial. Having reviewed the record, we conclude that while the trial court erred by preventing appellant from referencing a historically well-known case during closing argument, the error was harmless and thus does not require reversal. There being no merit to appellant's other contentions, we affirm.

The evidence of record shows that at 7:00 a.m. on April 15, 1997, eight-year-old Brandon Searcy left his home and walked on Baywood Drive toward the school bus stop. He was carrying his black and green book bag. At this same time, witnesses saw appellant Head walking toward Baywood Drive in a direction that would intersect with Brandon's path. Brandon was last seen at 7:15 a.m., standing alone across the street from his bus stop. He did not catch the school bus that morning and he did not attend school that day.

At approximately 6:15 a.m. that same morning, appellant purchased and drank beer at a nearby gas station. Appellant propositioned the sales woman for sex, and when she rebuffed him, he left. At around 10:00 a.m. that morning, appellant appeared at a barbershop. The barber, who was familiar with appellant, noted that appellant's hands were covered in fresh scratches. The barber also noticed that appellant behaved nervously and repeatedly looked out the shop's window. Appellant left the barbershop, but returned that afternoon, carrying a black and green book bag.

The next day, Brandon's body was discovered in a briar-covered vacant lot located two blocks from his home. His pants were pulled down and his shirt was pulled up. Saliva was found on Brandon's chest, near his nipples, but not in a quantity sufficient to test for DNA. Brandon's black and green book bag was found near his body. The cause of death was later determined to be blunt force trauma to the neck.

When questioned by police on April 17, appellant lied about his whereabouts at the time of Brandon's disappearance. When his room was searched, appellant's clothes, including his tennis shoes, had all been recently washed. After appellant was arrested, he told another jail inmate that he wanted to force oral sex on the man, "like [he] did Brandon." He told a different inmate that he did not want to kill "that little boy," but had to because he had tried to talk the boy into "doing something," but the boy refused.

At appellant's first trial, the jury deadlocked and a mistrial was declared. He was convicted at a second trial and sentenced to life in prison.

denied on that same date. The transcript was certified by the court reporter on October 19, 1998. Appellant filed a notice of appeal on February 27, 2001. The appeal was docketed with this Court on July 3, 2002, and argued orally on November 25, 2002.

1. The evidence, though circumstantial, was sufficient to enable rational triers of fact to find appellant guilty of the crimes for which he was convicted.[2]

2. Contrary to appellant's claim, the trial court did not err by refusing to excuse four prospective jurors for cause. Whether to strike a juror for cause lies within the sound discretion of the trial court.[3] Before a juror is excused for cause, it must be shown that he or she holds an opinion of a defendant's guilt or innocence that is so fixed and definite that the juror will be unable to set the opinion aside and decide the case based upon the evidence and the court's instructions.[4]

Prospective juror Gustke admitted during voir dire that he had a "slight leaning" toward believing that appellant was guilty, but that he could not draw any conclusions as to appellant's guilt or innocence because he had not seen any evidence and would need to do so before reaching a decision. He also stated that he could follow instructions regarding the presumption of appellant's innocence. Prospective juror Hubbard stated that because she knew appellant's first trial had ended with the declaration of a mistrial, she had formed an opinion that appellant was probably guilty, but that she would endeavor to remain impartial. She also stated that her opinion was not so fixed and definite that it would prevent her from deciding appellant's case based upon the evidence introduced at trial. Prospective juror Wilson stated that she knew of the earlier mistrial, believed the jurors in that trial did what they thought was right, and that she would have no difficulty deciding appellant's guilt or innocence based solely on the evidence introduced at trial.

Having reviewed the transcript, we conclude that none of these three jurors held a fixed and definite opinion of appellant's guilt or innocence that would have prevented them from adjudicating appellant's case based solely upon the evidence and the trial court's jury charge. It follows that the trial court properly declined to strike these jurors for cause.

Regarding the fourth juror appellant claims should have been struck for cause, prospective juror Kimble, the jury selection process was completed before she was considered. Because this prospective juror was not necessary for the selection and empaneling of the jury and the alternates, there can be no harmful error resulting from the failure to excuse her for cause.[5]

---

[2] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

[3] *Somchith v. State*, 272 Ga. 261, 262 (527 SE2d 546) (2000); *Garland v. State*, 263 Ga. 495, 496 (435 SE2d 431) (1993).

[4] *Somchith*, 272 Ga. at 262; *McClain v. State*, 267 Ga. 378, 380 (477 SE2d 814) (1996).

[5] *Heidler v. State*, 273 Ga. 54, 57 (537 SE2d 44) (2000).

3. We reject appellant's claim the trial court erred by denying his challenge under *Batson v. Kentucky*[6] to the State's striking for cause of three prospective African-American jurors — Jurors Stuckey, Nesmith and Hopwah. The analysis of *Batson* applies only to the use of peremptory strikes,[7] and we are unaware of any authority for extrapolating the *Batson* framework to for-cause strikes.[8]

4. Appellant claims the trial court erred in permitting Brandon's mother to testify that on the day of Brandon's murder, before leaving home to catch the school bus, he told her not to call the school and confirm that he arrived there safely "because God was going to be taking care of him." At trial, appellant objected to this statement as hearsay, but the trial court allowed it as part of the "res gestae." On appeal, appellant urges that this statement was irrelevant and elicited for prejudicial impact, as demonstrated by the State's closing argument, in which it argued to the jury that perhaps Brandon needed God's protection from people like appellant. Furthermore, argues appellant, the admission of this hearsay testimony paved the way for the State to inject religious considerations into the jury's deliberations.

The statement was not part of the "res gestae," as it was not made contemporaneously with, or in relation to, the commission of the crimes for which appellant was being tried.[9] Nor was the statement "nearly connected . . . in time"[10] to the commission of the crimes.

Nonetheless, even though the trial court's reason for allowing the statement was flawed, we conclude that the trial court did not err in overruling appellant's hearsay objection, because the statement was not hearsay. The statement was not offered in order to establish "the truth of the matter asserted therein . . . thus resting for its value upon the credibility of the out-of-court asserter."[11] To the contrary, we believe the statement was intended to demonstrate Brandon's nature and trusting disposition. Because the statement was not hearsay, the trial court did not err in admitting it over appellant's hearsay objection.[12]

---

[6] 476 U. S. 79 (106 SC 1712, 90 LE2d 69) (1986).

[7] 476 U. S. at 89, 96. This only stands to reason, as, unlike challenges for cause, no explanation is required for peremptory strikes.

[8] Courts that have considered whether *Batson* should apply to for-cause strikes have universally rejected the notion. See *United States v. Blackman*, 66 F3d 1572, 1575 n. 3 (11th Cir. 1995); *United States v. Elliott*, 89 F3d 1360, 1364-1365 (8th Cir. 1996), cert. denied, 519 U. S. 1118 (117 SC 963, 136 LE2d 849) (1997); *United States v. Bergodere*, 40 F3d 512, 515-516 (1st Cir. 1994).

[9] See OCGA § 24-3-3; Milich, Georgia Rules of Evidence, § 19.2, p. 315.

[10] OCGA § 24-3-3.

[11] McCormick, Evidence, § 246, p. 584. Accord OCGA § 24-3-1.

[12] *Padgett v. State*, 251 Ga. 503, 504-505 (307 SE2d 480) (1983).

As for appellant's claims on appeal that the statement was prejudicial, irrelevant, and led to an improper reference to religion during closing arguments, he did not raise these objections at the time of trial and they are therefore waived on appeal.[13]

5. The trial court did not err by allowing the State to introduce evidence of prior incidents where appellant tried to force himself sexually on a young male neighbor, kissed and fondled several children and touched a child's genitalia. Appellant claims this evidence did not show similar transactions but rather placed his character in issue. We disagree. The evidence was not admitted to show that appellant committed the crimes charged against him, but rather to show similarities that tend to establish a peculiar course of conduct or bent of mind.[14]

6. The trial court prohibited appellant from referring to the Richard Jewell investigation during closing arguments. Jewell was an Atlanta security guard who was wrongly identified as a suspect in a 1996 bombing. The investigation of Jewell was highly publicized and subjected the Jewell family to intense media scrutiny. Eventually, Jewell was exonerated and cleared of all suspicion in the bombing. Because appellant's case was also discussed in the media, he sought to use the Jewell case as an analogy to argue that when investigating Brandon Searcy's murder, authorities had mistakenly focused their investigation on appellant.

Counsel enjoys "very wide"[15] latitude in closing arguments, and may make use of well-known historical facts and illustrations, so long as he does not make extrinsic or prejudicial statements that have no basis in the evidence.[16] In making a closing argument, " 'it is (counsel's) right' "[17] to impugn or condemn motives and to " 'assail the credibility of witnesses . . . by circumstances.' "[18] Counsel's illustrations during closing argument " 'may be as various as are the resources of his genius; his argumentation as full and profound as his learning can make it; and he may, if he will, give play to his wit, or wing to his imagination.' "[19]

In this case, counsel had, while cross-examining Atlanta police officers who investigated Brandon's murder, sought to cast doubt on their identification of appellant as a suspect in the crime. Accord-

---

[13] *Moss v. State*, 275 Ga. 96, 99 (561 SE2d 382) (2002).

[14] *Stephens v. State*, 261 Ga. 356, 357 (405 SE2d 470) (1991). For this same reason, the trial court did not err in allowing testimony concerning appellant's sexual orientation and his aggressive sexual advances on a fellow inmate.

[15] *Conner v. State*, 251 Ga. 113, 122 (303 SE2d 266) (1983).

[16] *Robinson v. State*, 257 Ga. 194, 196 (357 SE2d 74) (1987).

[17] *Conner*, 251 Ga. at 122, quoting *Mitchum v. State*, 11 Ga. 615, 631 (1852).

[18] Id.

[19] Id.

ingly, there was an evidentiary basis for counsel's attempted reference to the Richard Jewell investigation during closing arguments. In light of this fact, and in consideration of the very wide latitude our case law accords counsel in crafting and making closing arguments, we believe the trial court erred by preventing counsel from referring to the Jewell investigation when making his closing argument to the jury.

We note, however, that the trial court's ruling did not altogether prevent counsel from arguing that authorities had mistakenly focused their investigation on appellant. Rather, counsel was only prevented from using a well-known case to illustrate that particular argument. In light of this, and having considered the overwhelming evidence of appellant's guilt, we conclude it is highly probable that the trial court's error in this instance did not contribute to the judgment against appellant, and thus was harmless.[20]

7. We have considered appellant's other arguments, and find them to be meritless.[21]

*Judgment affirmed. All the Justices concur, except Hunstein, J., who concurs in judgment only as to Division 2.*

DECIDED JANUARY 27, 2003.

*Robert H. Citronberg*, for appellant.

*Paul L. Howard, Jr., District Attorney, Bettieanne C. Hart, Elizabeth A. Baker, Assistant District Attorneys, Thurbert E. Baker, Attorney General, Jennifer S. Gill, Assistant Attorney General*, for appellee.

---

[20] *Scott v. State*, 275 Ga. 305, 308 (565 SE2d 810) (2002).

[21] These include appellant's claims that the trial court: (1) erred by denying appellant's motion for a directed verdict; (2) abused its discretion by denying appellant's mistrial motion after an objection raised during closing arguments; (3) abused its discretion by allowing the jury to rehear appellant's statement to police after deliberations had begun; (4) erred by admitting statements appellant made to a fellow inmate as incriminating admissions; and (5) erred by ruling that because appellant introduced evidence at trial, he forfeited his right to open and conclude closing arguments.