## S10A1347. DOLPHY v. THE STATE.
(707 SE2d 56)

NAHMIAS, Justice.

In 2008, Darrell Q. Dolphy was convicted of malice murder and other crimes arising from the shooting death of Rasheym Drummond. Dolphy appeals, and we affirm.[1]

1. The evidence at trial, viewed in the light most favorable to the

---

[1] The crimes occurred on January 3, 2006. Dolphy was indicted on December 31, 2007, for malice murder, two counts of felony murder, aggravated assault, possession of a firearm during the commission of a felony, and possession of a firearm by a convicted felon. At the conclusion of the October 14-17, 2008 trial, the jury convicted Dolphy on all charges. The felony murder convictions were vacated by operation of law, see *Malcolm v. State*, 263 Ga. 369, 372 (434 SE2d

verdict, showed the following. Around 2:30 p.m. on January 3, 2006, Dolphy chased Drummond down Martin Luther King, Jr. Drive in Fulton County, shooting at Drummond with a 9 mm handgun. Drummond returned fire with a .45 caliber pistol. Drummond was eventually shot and felled. Dolphy then stood over Drummond and fired several more rounds into him before fleeing in a waiting green Lexus. An autopsy showed that Drummond had been shot ten times in the head, torso, and extremities, with all the bullets entering from behind and exiting through the front.

Twenty minutes after the shooting, a green Lexus pulled up to Grady Hospital and dropped off Dolphy before speeding away. Dolphy had been shot twice. Dolphy told hospital personnel and the police that he did not know who shot him, that he was just walking down the street, and that he did not know if he was the target of the gunfire.

The crimes occurred in broad daylight on a busy street, and multiple witnesses testified that a man matching Dolphy's description chased the victim down and shot him to death. Shell casings were found at the crime scene from Dolphy's 9 mm handgun and the victim's .45 caliber handgun. A blood trail left at the crime scene, which was matched to Dolphy through DNA testing, corroborated the testimony that Dolphy chased Drummond down before killing him.

At trial, Dolphy changed his story. He claimed that he was outside a barbershop on his way to the grocery store when Drummond attempted to rob him, that he drew his 9 mm handgun to thwart the robbery, and that he only fired at the victim in self-defense after the victim had already shot him twice. Dolphy denied the witnesses' testimony that he shot the victim while standing over his supine body. Dolphy said that he had lied to the police about what happened because he was scared.

When viewed in the light most favorable to the verdict, the evidence presented at trial and summarized above was sufficient to authorize a rational jury to find the defendant guilty beyond a reasonable doubt of the crimes for which he was convicted. See *Jackson v. Virginia*, 443 U. S. 307, 319 (99 SC 2781, 61 LE2d 560) (1979). See also *Vega v. State*, 285 Ga. 32, 33 (673 SE2d 223) (2009)

---

479) (1993), and the remaining convictions, except for the conviction for possessing a firearm during the commission of a felony, merged for sentencing purposes, see *Wiley v. State*, 250 Ga. 343, 351 (296 SE2d 714) (1982). The trial court sentenced Dolphy to life in prison for malice murder plus five years consecutive for the firearm charge. Dolphy filed a motion for new trial on October 30, 2008, which he amended on December 15, 2008, and August 25, 2009. The motion was denied on November 9, 2009, and Dolphy filed a timely notice of appeal. The case was docketed in this Court for the September 2010 term and submitted for decision on the briefs.

("'It was for the jury to determine the credibility of the witnesses and to resolve any conflicts or inconsistencies in the evidence.'" (citation omitted)).

2. During her opening statement, the prosecutor showed the jury a PowerPoint slide that read, "Defendant's Story Is a Lie." Dolphy objected on the ground that the prosecutor was calling his story a lie, which was a matter for the jury to decide. The court ruled that the slide was argumentative and instructed the prosecutor to take it down, and she did. Seconds later, the prosecutor put up another PowerPoint slide that read, "People Lie When They Are Guilty." Dolphy again objected, and the court again told the prosecutor to take the slide down. Dolphy contends that the slides violated his right to due process by depriving him of a fair trial and that they impermissibly expressed the prosecutor's personal belief in Dolphy's guilt.

(a) When Dolphy objected, the trial court took immediate corrective action, ordering that the slides be taken down, and Dolphy did not seek additional relief in the form of a curative instruction or a mistrial. The trial court did not abuse its discretion in concluding that the slides were inappropriately argumentative for opening statement. The trial court instructed the jury before opening statements and again after the close of the evidence that the lawyers' opening statements are not evidence. The jury was also charged on the defendant's presumption of innocence and the State's burden of proof. Accordingly, the trial court did not deprive Dolphy of a fair trial by failing to declare a mistrial sua sponte.

(b) Dolphy's second argument involves the same two slides and OCGA § 17-8-75, which provides as follows:

> Where counsel in the hearing of the jury make statements of prejudicial matters which are not in evidence, it is the duty of the court to interpose and prevent the same. On objection made, the court shall also rebuke the counsel and by all needful and proper instructions to the jury endeavor to remove the improper impression from their minds; or, in his discretion, he may order a mistrial if the prosecuting attorney is the offender.

Dolphy objected to the slides, and the trial court effectively sustained the objections by ordering that the slides be taken down. However, the court did not rebuke counsel or specifically instruct the jury to disregard the slides. Although Dolphy did not request this relief, we recently explained that "[n]owhere in the statute is there a requirement for defense counsel to specifically request additional remedies after interposing an objection to the improper statements made by a

prosecutor." *O'Neal v. State*, 288 Ga. 219, 221 (702 SE2d 288) (2010).

> To the contrary, the plain language of OCGA § 17-8-75 refers to the trial court's independent duty, after defense counsel's objection, to rebuke the prosecutor, give an appropriate curative instruction, or grant a mistrial in the event that the prosecutor has injected into the case prejudicial statements on matters outside of the evidence.

*Id.* (emphasis deleted). The prosecutor's statements here were obviously "outside of the evidence," id., because the slides were shown during opening statement, before either side had put on any evidence. Thus, there was error if the slides put "prejudicial matters" before the jury. OCGA § 17-8-75.

Under the circumstances of this case, it is doubtful that the prosecutor's saying "Defendant's Story Is a Lie" and "People Lie When They Are Guilty" qualified as prejudicial within the meaning of OCGA § 17-8-75. The slides reflected evidence that the prosecutor expected to (and ultimately did) get admitted during the trial and argument that would be (and ultimately was) properly made during closing argument, so the same information later reached the jury appropriately. In any event, however, reversal is not required, because it is highly probable that any error did not contribute to the verdict. See *O'Neal*, 288 Ga. at 223 (explaining that harmless error analysis applies to alleged violations of OCGA § 17-8-75); *Walker v. State*, 281 Ga. 521, 524 (640 SE2d 274) (2007) (same). The trial court twice instructed the jury that opening statements are not evidence. And in addition to Dolphy's shifting stories, the other evidence of his guilt was strong, including eyewitness testimony, the blood trail at the crime scene that DNA testing showed belonged to Dolphy, and the autopsy results showing that Drummond was shot ten times from behind. "All things considered, including the strength of the State's evidence in this case, we conclude that it is highly probable that the trial court's [alleged] error in failing to comply with OCGA § 17-8-75 did not contribute to the verdicts." *Arrington v. State*, 286 Ga. 335, 346 (687 SE2d 438) (2009).

3. The State requested the pattern jury charge on voluntary manslaughter involving mutual combat, and Dolphy objected on the ground that the charge was likely to confuse the jury. The trial court denied the objection and gave the charge, but the court made a slip of the tongue when reading it to the jury, substituting "such" for "some" in a lengthy instruction on mutual combat:

> Mutual combat occurs when there is combat between two persons as a result of a sudden quarrel or such

circumstances as indicate a purpose, willingness, and intent on the part of both to engage mutually in a fight. . . .

If you find that there was a mutual intention on the part of both the deceased and the defendant to enter into a fight or mutual combat and that under these circumstances the defendant killed the deceased, then ordinarily such killing would be voluntary manslaughter, regardless of which party struck the first blow or fired the first shot.

Under *such* circumstances, such killing may be murder or it may be justifiable. If you find that the killing was done with malice, express or implied, and with a felonious intent to take the life of the person killed, and the killing was accomplished as a result of mutual combat, such killing would be murder.

The killing as a result of mutual combat may be justifiable, and you may find it to be so if it appears that the defendant reasonably believed at the time of the killing that the force the defendant used was necessary to prevent death or great bodily injury to the defendant or to prevent the commission of a forcible felony and if it further appears that the deceased was the aggressor. If it appears that the deceased was not the aggressor but that the defendant was the aggressor, then in order for the killing to be justified, if such killing was the result of mutual combat, it must further appear that the defendant withdrew from the encounter and effectively communicated to the deceased the intent to do so, and the deceased, notwithstanding, continued or threatened to continue . . . the use of unlawful force.

(Emphasis added.)

According to Dolphy, the substitution of "such" for "some" likely confused the jury, because in context "such circumstances" refers to the situation described in the preceding paragraph. As Dolphy reads the charge, the jury was instructed that if the victim died as a result of mutual combat, then "such killing may be murder or it may be justifiable," leaving no option for the jury to find the defendant guilty of voluntary manslaughter.

After the court charged the jury, the jury was excused, and the court asked if there were any objections or exceptions to the charge as given. Dolphy said that he would rely on his earlier objections, which obviously did not include any argument based on the court's inadvertent substitution of "such" for "some" when it later read the charge to the jury. Dolphy therefore failed to inform the court "of the specific objection and the grounds for such objection before the jury retire[d] to deliberate," OCGA § 17-8-58 (a), thereby "preclud[ing]

appellate review of such portion of the jury charge, unless such portion of the jury charge constitutes plain error which affects substantial rights of the parties," OCGA § 17-8-58 (b).

Moreover, we find no reversible error, much less any "plain error" pursuant to OCGA § 17-8-58 (b), assuming that analysis under that provision is proper in this case. See *Collier v. State*, 288 Ga. 756, 759 (707 SE2d 102) (2011). But see id. at 760 (Nahmias, J., specially concurring) (arguing that plain error review is mandated by OCGA § 17-8-58 (b) in this situation). Pretermitting whether Dolphy's interpretation of the mutual combat instruction is the way the jury would have understood it, the trial court here gave separate and full instructions on voluntary manslaughter, malice murder, and justification. In addition, the court instructed the jury toward the end of the charge:

> I would remind you that before you would be authorized to return a verdict of guilty with respect to either malice murder or felony murder, you must first consider whether or not there are circumstances which would authorize you to return a verdict with respect to the lesser included offense of voluntary manslaughter. And in this regard, if you do not believe beyond a reasonable doubt that the defendant is guilty of either malice murder or felony murder but do believe beyond a reasonable doubt that the defendant is guilty of voluntary manslaughter, then you would be authorized to find the defendant guilty of voluntary manslaughter.

We do not believe the jury, hearing the challenged instruction in the context of the charge as a whole and the evidence presented at trial, was likely to be confused by the court's slip of the tongue. See *Hilton v. State*, 288 Ga. 201, 206 (702 SE2d 188) (2010) ("[J]ury charges are not to be evaluated in isolation, but rather must be considered as a whole."). Therefore, "there was no reversible error, and it follows that there could be no plain error either (since plain error does not exist in the absence of reversible error)." *Collier*, 288 Ga. at 763 (Nahmias, J., specially concurring) (citation omitted).

*Judgment affirmed. All the Justices concur.*

DECIDED MARCH 7, 2011.

*John M. Gorrie*, for appellant.

*Paul L. Howard, Jr., District Attorney, Bettieanne C. Hart, Assistant District Attorney, Thurbert E. Baker, Attorney General, Mary Beth Westmoreland, Deputy Attorney General, Paula K. Smith,*

*Senior Assistant Attorney General, David A. Zisook, Assistant Attorney General*, for appellee.