## S11A0319. CAWTHON v. THE STATE.

(713 SE2d 388)

HINES, Justice.

Maurice Cawthon appeals his conviction for the felony murder of Bernard Sims.[1] For the reasons that follow, we affirm.

Construed to support the verdicts, the evidence showed that Bernard Sims was a homeless man who spent most of his time in downtown Decatur. His body was found on the morning of April 5, 2008, lying on the ground behind some benches; the benches were under a roof mounted on posts, and was an assembly point for those seeking to be employed in casual labor, which Sims frequented. Near Sims's body were some empty beer cans, bricks, and a tree branch. Investigation revealed that Sims died of blunt force trauma to the head. Lacerations caused by blunt objects had exposed his skull along the forehead, and to the bridge of his nose, cutting the bone. His nasal cavity had been exposed by laceration, the nasal bridge to the tip of his nose had been "opened" by his injuries, and the soft tissues of the bridge of the nose were missing. There were several other lacerations and abrasions on Sims's face. The medical examiner testified that a layperson would describe Sims's face as "split in half." Sims's sternum was also broken, as was his larynx cartilage.

Cawthon gave a statement to police in which he related that: Cawthon had previously had an argument with Sims; Cawthon and other persons were in an apartment near the labor stand; Cawthon had been drinking; Cawthon left the apartment and, after a telephone call from one of the other persons, rejoined the group on the street; the group came upon Sims sleeping at the labor stand and

---

[1] The crimes occurred on April 5, 2008. On June 30, 2008, a DeKalb County grand jury indicted Cawthon, along with Tony Brightwell, Dorrell Parker, and Tyrone Smith for malice murder, felony murder while in the commission of aggravated assault, felony murder while in the commission of aggravated battery, aggravated assault, aggravated battery, and kidnapping with bodily injury. Cawthon was tried alone before a jury March 9-13, 2009; Cawthon was found not guilty of malice murder, the court directed a verdict of not guilty as to the charge of kidnapping with bodily injury, and the jury found Cawthon guilty of all other charges. On March 13, 2009, the trial court sentenced Cawthon to life in prison for felony murder while in the commission of aggravated assault; the other crimes merged with the felony murder. *Malcolm v. State*, 263 Ga. 369, 371-374 (5) (434 SE2d 479) (1993). Cawthon moved for a new trial on April 7, 2009, and amended the motion on June 30, 2010; the motion was denied on July 23, 2010. On September 13, 2010, Cawthon filed a motion to file an out-of-time appeal, which was granted on September 15, 2010. Cawthon filed a notice of appeal on September 22, 2010, his appeal was docketed in the January 2011 term of this Court, and submitted for decision on the briefs.

began to beat him; Sims arose and struck one of his attackers, which angered Cawthon; one of the attackers forced Sims to the ground, and Cawthon kicked him; Cawthon and the others continued to beat Sims, took him behind the benches, and left; the group returned after a few minutes, and Cawthon began kicking Sims some more; he threw a brick down at Sims, ceasing to do so when he aggravated an injury to his own thumb; Cawthon did not know how many times Sims was struck with a brick, but knew it was many, as his face was "almost gone"; and, during the attack, he "probably did more than" he could recall.

1. The evidence was sufficient to enable a rational trier of fact to find Cawthon guilty beyond a reasonable doubt of the crimes of which he was convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Cawthon contends that the trial court should have excluded testimony of three witnesses regarding prior difficulties between Cawthon and Sims, contending that the testimony was inadmissible hearsay.

> Prior difficulty evidence may be admitted to show motive, intent, or bent of mind, but its admissibility is not dependent on a showing that it is sufficiently similar to the crime. The testimony of third parties about prior difficulties between the defendant and the victim may be admitted into evidence under the necessity exception to the hearsay rule if the testimony is necessary and trustworthy and when the statement is more probative of the material fact than other evidence that may be produced and offered. Whether the testimony has particularized guarantees of trustworthiness is a matter left to the trial court's discretion and is not disturbed absent a showing of an abuse of that discretion.

*Wright v. State*, 285 Ga. 57, 59-60 (3) (673 SE2d 249) (2009) (Citations and punctuation omitted.) However, Cawthon's arguments are unavailing.[2]

(a) Presley testified that, two weeks before Sims was killed, she was on the porch near the scene of the attack with Cawthon and some other persons. One of the others said that "we beat [Sims] up before and we'll do it again if he keeps running his mouth," to which

---

[2] To the extent that Cawthon argues that the admission of any of the prior difficulty evidence from the three witnesses impermissibly placed his character in issue, the evidence was relevant to Sims's motive for the attack, and thus was not rendered inadmissible merely by incidentally placing his character in issue. *Tuff v. State*, 278 Ga. 91, 92 (2) (597 SE2d 328) (2001); *Vaughns v. State*, 274 Ga. 13, 15 (2) (549 SE2d 86) (2001).

Cawthon said "yeah," and nodded agreement. In its order on the motion for new trial, the trial court noted that counsel for Cawthon had stated that he saw no basis to exclude the testimony. Thus, the court ruled, correctly, that review of the issue was waived. See *Nance v. State*, 280 Ga. 125, 130-131 (9) (623 SE2d 470) (2005); *Roseberry v. State*, 274 Ga. 301, 303-304 (3) (553 SE2d 589) (2001). In any event, the evidence was admissible; by his response, Cawthon adopted as his own the statement that "we" beat up Sims, and would do so again. *White v. State*, 276 Ga. 583, 587 (1) (b) (581 SE2d 18) (2003). See also *Gordon v. State*, 273 Ga. 373, 374 (2) (a) (541 SE2d 376) (2001). Threats of violence regarding the victim but made to others are admissible to show motive and intent. *Riley v. State*, 278 Ga. 677, 687 (9) (604 SE2d 488) (2004).

(b) Smith testified that, two weeks before Sims was killed, Smith saw Sims with bruises on his face, and remarked that Sims looked like "somebody got a hold to" him; Sims responded by "laugh[ing] it off," and "never did say what, who, or when . . . ." There was no hearsay in Smith's testimony; he testified as to his observations, and what he related regarding Sims "laugh[ing] it off," was not hearsay, as it "was not offered in order to establish 'the truth of the matter asserted therein . . . thus resting for its value upon the credibility of the out-of-court asserter.' " *Head v. State*, 276 Ga. 131, 134 (4) (575 SE2d 883) (2003). See also *Fugitt v. State*, 256 Ga. 292, 295 (1) (c) (348 SE2d 451) (1986) ("What the victim said simply does not fall under the hearsay rule, since it was not offered 'as an assertion to show the truth of the matters asserted therein.' [Cit.]").

(c) Spencer testified that, one week before Sims was killed, he and Sims were together and Sims related that he had been "jumped" by some people, identifying one as "N-O."[3] Later that day, Sims and Spencer were again together, saw some young men, and Sims indicated that Cawthon and another of the young men were two of the individuals who had previously attacked him. Although Cawthon asserts that the statement did not bear indicia of reliability, the circumstances of Sims's statements indicate otherwise; he had no apparent reason to lie to Spencer, his statements were part of spontaneous exchanges with Spencer, and at the time, Sims's face was visibly swollen. See *Hayes v. State*, 268 Ga. 809, 811-812 (3) (493 SE2d 169) (1997).

3. Cawthon requested that the jury be instructed on the law regarding involuntary manslaughter and simple battery as lesser included offenses. The trial court did not give the instructions, and when the court asked if the defense had any exception to the jury

---

[3] This was an alias of one of Cawthon's co-indictees.

instructions, counsel replied "[n]ot as read." OCGA § 17-8-58 (a)[4] states that "[a]ny party who objects to any portion of the charge to the jury or the failure to charge the jury shall inform the court of the specific objection and the grounds for such objection before the jury retires to deliberate. . . ." Thus, under this Code section, unless a party " 'specifically object[s] . . . at the conclusion of the jury charge, he has waived his right to urge error on appeal.' [Cit.]" *Madrigal v. State*, 287 Ga. 121, 122-123 (3) (694 SE2d 652) (2010). And, Cawthon does not assert that the failure to give the requested instructions constitutes plain error, see OCGA § 17-8-58 (b), nor does any plain error appear. At the charge conference, Cawthon argued that the jury could find that his acts constituted only the misdemeanor of simple battery, so as to support a finding of involuntary manslaughter. The trial court, noting that the evidence was undisputed that Sims was seriously disfigured, concluded that only a charge on the greater offense of aggravated battery was warranted, see *Lamb v. State*, 273 Ga. 729, 732 (2) (546 SE2d 465) (2001), and the plain error exception does not apply. See *Hicks v. State*, 287 Ga. 260, 264 (4) (695 SE2d 195) (2010). See also *Dolphy v. State*, 288 Ga. 705, 710 (3) (707 SE2d 56) (2011).

*Judgment affirmed. All the Justices concur, except Nahmias, J., who concurs specially.*

CARLEY, Presiding Justice, concurring.

I fully concur in the judgment of affirmance, but write separately to emphasize that, in Division 3, the majority has not adopted the special concurrence authored by Justice Nahmias in *Collier v. State*, 288 Ga. 756, 759 (707 SE2d 102) (2011). This is especially clear from its quotation of *Madrigal v. State*, 287 Ga. 121, 122-123 (3) (694 SE2d 652) (2010) and from its citation to *Dolphy v. State*, 288 Ga. 705, 710 (3) (707 SE2d 56) (2011). Indeed, because the majority approves the trial court's conclusion that the evidence did not warrant a charge on simple battery and involuntary manslaughter as lesser included offenses, the holding of Division 3 can best be expressed in the same language used by Justice Nahmias in *Dolphy*

---

[4] In its entirety, OCGA § 17-8-58 reads:

(a) Any party who objects to any portion of the charge to the jury or the failure to charge the jury shall inform the court of the specific objection and the grounds for such objection before the jury retires to deliberate. Such objections shall be done outside of the jury's hearing and presence.

(b) Failure to object in accordance with subsection (a) of this Code section shall preclude appellate review of such portion of the jury charge, unless such portion of the jury charge constitutes plain error which affects substantial rights of the parties. Such plain error may be considered on appeal even if it was not brought to the court's attention as provided in subsection (a) of this Code section.

*v. State*, supra: "[W]e find no reversible error, much less any 'plain error' pursuant to OCGA § 17-8-58 (b), assuming that analysis under that provision is proper in this case. [Cits.]"

NAHMIAS, Justice, concurring specially.

For the reasons given in my special concurrence in *Collier v. State*, 288 Ga. 756, 759 (707 SE2d 102) (2011), I believe that OCGA § 17-8-58 (b) mandates that appellate courts apply plain error review to enumerated errors regarding jury charges that were not objected to at trial as required by OCGA § 17-8-58 (a). Thus, I do not agree with the statement in Division 3 of the majority opinion that Cawthon's failure to object at trial to the denial of his requested jury instruction " " " "waived his right to urge error on appeal." " " " Maj. Op. at 510 (quoting *Madrigal v. State*, 287 Ga. 121, 122-123 (694 SE2d 652) (2010)). Instead, as the majority correctly says just after quoting *Madrigal*, Cawthon may still receive *plain* error review of his jury charge issue on appeal. The majority then correctly concludes that he has not shown plain error, citing another case from this Court — *decided on the very same day as Madrigal* — that holds that we will review for plain error in this situation. See id. at 510 (citing *Hicks v. State*, 287 Ga. 260, 264 (695 SE2d 195) (2010)).

As I have now repeated seven times since *Collier*, this Court needs to resolve the clear conflict in our case law on the meaning of OCGA § 17-8-58. We should do so by overruling *Madrigal* and similar cases without further delay. Accordingly, I do not join the portion of Division 3 that quotes and relies on *Madrigal*, although I join the remainder of the majority opinion and the judgment.

DECIDED JULY 8, 2011.

*Lee W. Fitzpatrick*, for appellant.

*Robert D. James, Jr.*, District Attorney, *Leonora Grant*, Assistant District Attorney, *Thurbert E. Baker*, Attorney General, *Paula K. Smith*, Senior Assistant Attorney General, *Christopher R. Johnson*, Assistant Attorney General, for appellee