309 Ga. 163
FINAL COPY

S20A0402.  DOBBINS v. THE STATE.

WARREN, Justice.

A jury convicted Michael Dobbins of malice murder and other crimes in connection with the shooting death of Hollis David Boddie.[1]  On appeal, Dobbins contends that the evidence was insufficient to support his convictions; that the trial court erred by failing to grant Dobbins's motion for mistrial, to rebuke the prosecutor, or to give a curative instruction when the prosecutor

---

[1] The crimes occurred on the afternoon of December 5, 2015.  A Fulton County grand jury indicted Dobbins for malice murder, two counts of felony murder, aggravated assault, criminal damage to property in the first degree, possession of a firearm during the commission of a felony, and three counts of possession of a firearm by a convicted felon.  After a December 2016 trial of Dobbins ended with a hung jury and mistrial, the State re-indicted him on the same counts, and Dobbins was re-tried in August 2017.  The jury found Dobbins guilty on all counts, and the trial court sentenced him to life in prison for malice murder, ten years consecutive for criminal damage to property, five years consecutive for possession of a firearm during the commission of a felony, and five years consecutive for one of the counts of possession of a firearm by a convicted felon.  The remaining counts were merged or vacated by operation of law.  On August 22, 2017, Dobbins timely filed a motion for a new trial, which he amended on April 8, 2019.  After a hearing, the trial court denied the motion, as amended, on July 2, 2019.  On July 3, 2019, Dobbins filed a timely notice of appeal, which was docketed in this Court to the term beginning in December 2019 and submitted for a decision on the briefs.

referenced Dobbins's "previous trial" before the jury; and that his trial counsel rendered constitutionally ineffective assistance by failing to provide written notice of her intent to use a prior conviction of one of the State's witnesses for impeachment purposes. Seeing no reversible error, we affirm.

1.     Viewed in the light most favorable to the jury's verdicts, the evidence presented at trial showed the following. During the hours leading up to the shooting on December 5, 2015, a group of friends were playing cards and drinking beer in the courtyard of their apartment complex. The group included Dobbins, Boddie, Carla Hines, Shanterria Habersham, and Michael Adkins. At one point, Dobbins and Adkins began arguing about $5 that Adkins owed Dobbins. Dobbins became "mad" and "started acting crazy." According to Hines, Dobbins also began arguing with Boddie, who "was sitting there getting smart and stuff," causing Dobbins to respond by saying, "who do you think you talking to?" and by yelling "bang, bang, bang" while laughing.

At some point, Dobbins went to his apartment and returned to

the courtyard with a gun visibly "hanging out his pocket."[2]  Soon

after Dobbins returned with his gun, Adkins and Hines decided to

return to their apartments, leaving Dobbins, Boddie, and

Habersham together in the courtyard.  Hines, however, continued to

watch the remaining three from her apartment window.  As

Habersham, Dobbins, and Boddie sat together, Dobbins pulled out

his gun.  Boddie told him "son, put that up."  Dobbins complied,

either putting the gun back in his pocket or in his lap.  Habersham

decided to leave the courtyard to return to her apartment, leaving

only Dobbins and Boddie behind in the courtyard.  Habersham

testified that about a "minute and a half" after leaving, she heard

four or five gunshots.  Hines testified that from her apartment, she

heard Dobbins say "who you think you talking to," and heard yelling.

She testified that she looked out her window, she saw Dobbins "get

---

[2] At trial, Habersham described Dobbins's gun as "silver and kind of like a cowboy gun," noting that it was "big" and "kind of old-fashioned."  When the prosecutor asked Dobbins if the gun had "a wheel in the middle of it that holds bullets," Dobbins replied, "yes."  Hines also described Dobbins's gun as silver, and when the prosecutor asked her if the gun had "a circle in the middle of it like a cowboy gun," she replied, "something like that.  Yes, sir."

up and that's when I saw him shoot [Boddie]," and that she was "very confident" about what she saw. Hines called the police and said Dobbins killed Boddie. Police arrived shortly thereafter. After talking to some of the residents in the apartment complex, including Hines, police arrested Dobbins, who was still at the scene.

Two months after the shooting, Clinton Hill, a resident of the same apartment complex, told residents Willie White and Demarko Smith that Dobbins had given Hill the gun that Dobbins used to shoot Boddie. Hill said he threw the gun over the fence near the apartment complex, but investigators could not find it. Hill died four days later from medical causes unrelated to this case. Although law enforcement never located the murder weapon, forensic analysis of the bullets recovered from Boddie's body determined that the bullets were all fired from the same firearm and were all "consistent with being fired from a Ruger Taurus or a Smith & Wesson .38 Special or a .357 magnum revolver."

2. Dobbins argues that there is insufficient evidence to support his convictions. Specifically, he points to testimony from the

State's gunshot primer residue analyst that the "hand collection kit" with gunshot primer residue samples from Dobbins's hands was "contaminated or was improperly collected," and that the analysis of Dobbins's clothing "failed to reveal any particles characteristic[ ] of gunshot primer residue." He also argues that the evidence was insufficient because the lead detective's investigation was deficient, because Hill—who told White and Smith that Dobbins gave him the murder weapon—was known for his lack of truthfulness, because Hill's statements were unreliable, and because the murder weapon was never found. We disagree.

When evaluating challenges to the sufficiency of the evidence, we view the evidence presented at trial in the light most favorable to the jury's verdicts and ask whether any rational trier of fact could have found the defendant guilty beyond a reasonable doubt of the crimes for which he was convicted. See *Jackson v. Virginia*, 443 U.S. 307, 319 (99 SCt 2781, 61 LE2d 560) (1979); *Jones v. State*, 304 Ga. 594, 598 (820 SE2d 696) (2018). "We leave to the jury the resolution of conflicts or inconsistencies in the evidence, credibility of

witnesses, and reasonable inferences to be derived from the facts,"
*Smith v. State*, 308 Ga. 81, 84 (839 SE2d 630) (2020), and we do not
reweigh the evidence, *Ivey v. State*, 305 Ga. 156, 159 (824 SE2d 242)
(2019). And "[a]lthough the State is required to prove its case with
competent evidence, there is no requirement that it prove its case
with any particular sort of evidence." *Plez v. State*, 300 Ga. 505, 506
(796 SE2d 704) (2017). "As long as there is some competent
evidence, even though contradicted, to support each fact necessary
to make out the State's case, the jury's verdict will be upheld."
*Smith*, 308 Ga. at 84 (citation and punctuation omitted).

Here, the evidence presented at trial — including testimony
that Dobbins and Boddie were arguing before the shooting, an
eyewitness's testimony that she saw Dobbins shoot Boddie,
Dobbins's presence at the crime scene, and testimony that Dobbins
possessed the murder weapon and disposed of it by giving it to
another resident of the apartment complex — was sufficient to
authorize a rational jury to find Dobbins guilty beyond a reasonable
doubt of the crimes for which he was convicted. See *Jackson*, 443

U.S. at 319; *McCoy v. State*, 292 Ga. 296, 296 (736 SE2d 425) (2013) (evidence, which included "[w]itnesses [who] saw appellant and the victim arguing minutes before the shooting; [and] one [who] saw appellant shoot the victim," was sufficient to support convictions).

3.     Dobbins argues that the trial court erred when it failed to grant his motion for mistrial, rebuke the prosecutor, or give a curative instruction, in accordance with OCGA § 17-8-75, when the prosecutor referenced Dobbins's "previous trial" before the jury.  For the reasons explained below, we conclude that Dobbins waived his right to complain on appeal that the trial court erred in denying his motion for mistrial or in failing to give a curative instruction, and that — even assuming the trial court committed error by not rebuking the prosecutor — any such error was harmless.

Before the trial at issue in this appeal, Dobbins was tried for the same crimes, but his first trial ended with a hung jury and mistrial.  In the trial at issue in this case, during the direct examination of a witness, the State — in the process of trying to call the witness's attention to a prior inconsistent statement — said, "I'm

handing you a copy of the transcript from the previous trial."

Dobbins's counsel asked to approach the bench, and, at a sidebar conference, said: "Your Honor, the State just mentioned a previous trial. I would move for a mistrial. This is not information that the jury is allowed to know." The trial court said to the prosecutor, "[y]ou didn't say hearing. You said trial," but then ruled: "Well, I'm going to deny the motion for a mistrial. With that ruling, do you want a curative instruction? It would probably just highlight it at this point." Trial counsel responded: "Well, I think for the record I just have to except to the court not granting a mistrial. I don't think a curative instruction would help under these circumstances, without waiving . . . the objection, your Honor." The trial court then told the prosecutor, "[i]t would be a good opportunity for you to re-ask it the right way. That might help some, so do that," which the prosecutor did by asking the witness, "have you had an opportunity to review your previous testimony of a prior hearing in this case?" At the conclusion of the witness's testimony, the jury was dismissed for lunch, and the trial court reminded the attorneys, "it's been

inadvertent," but "[w]e don't want to refer to it as anything other than a prior hearing, prior proceeding. Don't make reference to a prior trial. I don't think it's error at this point. So just be mindful moving forward."

Under OCGA § 17-8-75,

> [w]here counsel in the hearing of the jury makes statements of prejudicial matters which are not in evidence, it is the duty of the court to interpose and prevent the same. On objection made, the court shall also rebuke the counsel and by all needful and proper instructions to the jury endeavor to remove the improper impression from their minds; or, in his discretion, he may order a mistrial if the prosecuting attorney is the offender.

Here, Dobbins moved for a mistrial based on the prosecutor's reference to "the previous trial," and the trial court denied that motion. Under the circumstances of this case, however, we need not decide if the trial court abused its discretion in denying Dobbins's motion for mistrial. That is because Dobbins waived his right to complain about the trial court's denial of his motion for mistrial when trial counsel refused the trial court's offer to give a curative instruction. See *Stephens v. State*, 307 Ga. 731, 740 (838 SE2d 275)

(2020) (where defendant argued on appeal that the trial court erred in denying defendant's motion for mistrial under OCGA § 17-8-75, holding that defendant "did not preserve this issue for our review because his counsel affirmatively informed the court that [defendant] did not want a curative instruction to be given"); see also *Brewer v. State*, 301 Ga. 819, 820 (804 SE2d 410) (2017) ("Given that [the defendant] declined the court's offer to give a curative instruction with regard to the statement, he cannot now complain about its refusal to declare a mistrial. Accordingly, [the defendant] has waived his right to complain about the trial court's decision.") (citation omitted).[3]

---

[3] Trial counsel's attempt to refuse the trial court's offered curative instruction "without waiving . . . the objection," does not preserve Dobbins's claim on appeal. Our case law is clear that a defendant who affirmatively refuses a curative instruction about the State's mention of an allegedly prejudicial matter not in evidence under OCGA § 17-8-75 cannot then complain on appeal about a trial court's refusal to grant a mistrial on the issue. See *Stephens*, 307 Ga. at 740. Otherwise, a defendant could potentially induce trial court error by affirmatively refusing curative measures, yet complain on appeal that such error required reversal. But "[a] party cannot complain of a judgment, order, or ruling that his own conduct produced or aided in causing." *Ingram v. State*, 290 Ga. 500, 503-504 (722 SE2d 714) (2012) (citation and punctuation omitted) (defendant complained on appeal about failure to give jury instruction that defendant had opposed at trial).

Similarly, Dobbins cannot now complain that the trial court erred by failing to give a curative instruction. The trial court offered to give a curative instruction but Dobbins declined it. *Jeffers v. State*, 290 Ga. 311, 316 (721 SE2d 86) (2012) ("Since defense counsel declined the trial court's offer to give curative instructions to the jury" regarding a witness's use of the word "stalking" after being instructed to avoid that word, the defendant "will not now be heard to complain" that the trial court erred in failing to give those curative instructions) (citation and punctuation omitted); see also *Ingram v. State*, 290 Ga. 500, 503-504 (722 SE2d 714) (2012) ("A party cannot complain of a judgment, order, or ruling that his own conduct produced or aided in causing.") (citation and punctuation omitted).

We must also, however, evaluate Dobbins's claim that the trial court erred when it failed to rebuke the State's prosecutor under OCGA § 17-8-75, which provides that a court "shall . . . rebuke . . . counsel" "[o]n objection made[.]" Here, although the record shows that trial counsel moved for a mistrial after the State referenced

Dobbins's "previous trial," trial counsel did not make a specific objection on that ground. Pretermitting whether Dobbins's motion for mistrial constituted a "proper objection" to the State's reference to Dobbins's "previous trial" under OCGA § 17-8-75,[4] and even assuming that the trial court erred by failing to rebuke counsel,[5] any

---

[4] But see *Adams v. State*, 306 Ga. 1, 3 (829 SE2d 126) (2019) (in the context of general evidentiary objections, "to preserve an objection for ordinary appellate review, the specific ground of the objection must be made at the time the challenged evidence is offered") (citation and punctuation omitted). Cf. *Williams v. State*, 301 Ga. 712, 717 (804 SE2d 31) (2017) (in analyzing claim under OCGA § 17-8-75, noting that trial counsel "objected *and* moved for a mistrial") (emphasis supplied); *O'Neal v. State*, 288 Ga. 219, 221 (702 SE2d 288) (2010) (noting that under OCGA § 17-8-75, the court "shall rebuke" counsel "where a *proper objection* has been raised") (punctuation omitted; emphasis supplied); *Ledbetter v. State*, 262 Ga. 370, 371 (418 SE2d 57) (1992) (noting that trial counsel waived appellate review of his claim where he "fail[ed] to object *or* to demand a mistrial" at trial) (emphasis supplied).

[5] We recognize an apparent tension in our precedent between cases that rely on *O'Neal*'s admonition that "[n]owhere in [OCGA § 17-8-75] is there a requirement for defense counsel to specifically request additional remedies after interposing an objection," 288 Ga. at 221-222 (citing cases), to mean that, upon proper objection, a trial court has a duty to rebuke counsel and give a curative instruction, even in the absence of a specific request for such relief, and more recent cases that appear to have held to the contrary. Compare, e.g., *Geiger v. State*, 295 Ga. 190, 194 (758 SE2d 808) (2014) (Once trial counsel "has raised an objection, OCGA § 17-8-75 imposes a duty upon the trial court 'to rebuke the prosecutor, give an appropriate curative instruction, or grant a mistrial in the event that the prosecutor has injected into the case prejudicial statements on matters outside of the evidence,'" and "once an objection has been raised, a defendant does not waive appellate review of the trial court's failure to rebuke a prosecutor or give a curative instruction by failing to

such assumed error would be harmless. See *O'Neal v. State*, 288 Ga. 219, 223 (702 SE2d 288) (2010) (trial court error under OCGA § 17-8-75 analyzed for harmless error); see also *Williams v. State*, 301 Ga. 712, 717-718 (804 SE2d 31) (2017) (same). The evidence of Dobbins's guilt, detailed above in Division 1, was strong. Moreover, the trial court instructed the jury both before opening statements and after closing arguments that the lawyers' statements are not evidence. See *Fleming v. State*, 306 Ga. 240, 243 (830 SE2d 129) (2019) (explaining that "[e]ven if we were to assume that the trial court erred in not rebuking the prosecutor under OCGA § 17-8-75, any such error was harmless" because of the "substantial evidence"

request a specific remedy.") (quoting *O'Neal*); *Dolphy v. State*, 288 Ga. 705, 707-708 (707 SE2d 56) (2011) (noting that "[a]lthough [defendant] did not request" the court to rebuke the prosecutor or give a specific curative instruction, we explained in *O'Neal* that "OCGA § 17-8-75 refers to the trial court's independent duty, after defense counsel's objection," to provide such remedies, even without a specific request to do so) (citation and punctuation omitted) with *Stephens*, 307 Ga. at 734 ("'(W)here the objection to the prejudicial matter is sustained, the court has no duty to rebuke counsel or give curative instructions unless specifically requested by the defendant.'") (quoting *Fleming v. State*, 306 Ga. 240, 243 (830 SE2d 129) (2019)) and *Cheley v. State*, 299 Ga. 88, 95 (786 SE2d 642) (2016) ("[I]t is well established that a trial court has no duty to rebuke a prosecutor under [OCGA § 17-8-75] unless specifically requested by the defendant."). But we need not resolve that apparent tension at this time because any alleged error in this case was harmless.

against the defendant and the trial court's instructions that closing arguments are not evidence).  See also *Williams*, 301 Ga. at 717-718 (prosecutor's prejudicial question, which "was limited to one sentence and was promptly objected to," causing the trial court to tell prosecutor to "drop further questioning on the matter," did not require reversal, in part because of "the strength of the case against [defendant]"); *Dolphy v. State*, 288 Ga. 705, 707-708 (707 SE2d 56) (2011) (where defendant objected to slides prosecutor used in opening argument and the trial court "sustained the objections" but "did not rebuke counsel or specifically instruct the jury to disregard the slides," any error under OCGA § 17-8-75 was harmless because the evidence of the defendant's guilt was "strong" and the trial court "twice instructed the jury that opening statements are not evidence").  As a result, "it is highly probable that the trial court's alleged error in failing to comply with OCGA § 17-8-75 did not contribute to the verdicts." *Dolphy*, 288 Ga. at 708 (citation and punctuation omitted).

4.  Dobbins argues that his trial counsel provided

constitutionally ineffective assistance when she did not give the required statutory notice to admit evidence of Hines's prior felony conviction so that it could be used to impeach her. Specifically, at trial, Dobbins's counsel sought to impeach Hines's character for truthfulness by introducing into evidence Hines's 15-year-old felony conviction for forgery. Dobbins's counsel, however, did not provide advance notice of her intent to use Hines's prior conviction, as was required under OCGA § 24-6-609 (b) ("Rule 609 (b)"), and the trial court did not allow it to be introduced.[6] Notably, when the trial court addressed the admissibility of Hines's prior conviction, the State argued that it was inadmissible both because Dobbins's counsel did

---

[6] OCGA § 24-6-609 (b) provides:

Evidence of a conviction under this Code section shall not be admissible if a period of more than ten years has elapsed since the date of the conviction or of the release of the witness from the confinement imposed for such conviction, whichever is the later date, unless the court determines, in the interests of justice, that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect. However, evidence of a conviction more than ten years old, as calculated in this subsection, shall not be admissible unless the proponent gives to the adverse party sufficient advance written notice of intent to use such evidence to provide the adverse party with a fair opportunity to contest the use of such evidence.

not provide the State with the required prior notice *and* because the evidence was more prejudicial than probative. The trial court agreed, ruling that the more than ten-year-old conviction was inadmissible on both grounds provided in Rule 609 (b) --- i.e., because the proponent did not provide "sufficient advance written notice" and because "the probative value of the conviction" did not "substantially outweigh[ ] its prejudicial effect" — concluding, "I do not find that the probative value of this conviction outweighs the prejudicial effect of it in considering [the relevant] factors and what I have before me."

To prevail on a claim of ineffective assistance of counsel, a defendant generally must show that counsel's performance was deficient and that the deficient performance resulted in prejudice to the defendant. See *Strickland v. Washington*, 466 U.S. 668, 687-695 (104 SCt 2052, 80 LE2d 674) (1984); *Wesley v. State*, 286 Ga. 355, 356 (689 SE2d 280) (2010). To satisfy the deficiency prong, a defendant must demonstrate that his attorney "performed at trial in an objectively unreasonable way considering all the circumstances

and in the light of prevailing professional norms." *Romer v. State*, 293 Ga. 339, 344 (745 SE2d 637) (2013); see also *Strickland*, 466 U.S. at 687-688. To satisfy the prejudice prong, a defendant must establish a reasonable probability that, in the absence of counsel's deficient performance, the result of the trial would have been different. See *Strickland*, 466 U.S. at 694. "If an appellant fails to meet his or her burden of proving either prong of the *Strickland* test, the reviewing court does not have to examine the other prong." *Lawrence v. State*, 286 Ga. 533, 533-534 (690 SE2d 801) (2010).

Pretermitting whether trial counsel performed deficiently by not providing advance notice of her intent to introduce Hines's 15-year-old conviction, the record shows that the trial court found that Hines's conviction was inadmissible because its probative value did not sufficiently outweigh its prejudicial impact under Rule 609 (b). Dobbins does not challenge this alternate ruling. Because Dobbins has not shown that his trial counsel's failure to provide advance notice of Hines's prior conviction under Rule 609 (b) would have changed the trial court's decision to exclude that evidence, Dobbins

has not established a reasonable probability that, in the absence of counsel's alleged deficiency, the result of Dobbins's trial would have been different. See *Strickland*, 466 U.S. at 694. As a result, Dobbins fails to meet his burden of demonstrating prejudice, and his claim of constitutional ineffectiveness fails. See *Wofford v. State*, 305 Ga. 694, 697 n.4 (827 SE2d 652) (2019) (rejecting defendant's ineffective assistance claim in part because defendant failed to show that prior convictions of a witness, some of which were "presumptively inadmissible" because they were too old under OCGA § 24-6-609 (b), and others that were "absolutely inadmissible" under OCGA § 24-6-609 (a), would have been admissible to impeach witness); *Prothro v. State*, 302 Ga. 769, 772 (809 SE2d 787) (2018) (defendant failed to show that he was prejudiced by trial counsel's failure to move timely for expert assistance, in part, because the trial court rejected that motion on the merits, and "[a]lthough the court also noted in its order that the motion had been filed late, [defendant] has presented no evidence that the trial court would have ruled differently if the motion had been filed earlier").

5.     We recently held that, "at least where . . . errors by the court and counsel involve evidentiary issues," Georgia courts should "consider collectively the prejudicial effect, if any, of trial court errors, along with the prejudice caused by any deficient performance of counsel." *State v. Lane*, 308 Ga. 10, 14, 17 (838 SE2d 808) (2020). Here, for the purposes of this *Lane* analysis, the presumed trial court error is failing to rebuke the prosecutor for making a statement of a prejudicial matter not in evidence, and the presumed deficient performance of counsel is failing to provide the required statutory notice of intent to use a conviction more than ten years old. But the collective effect of these presumed errors is not sufficiently harmful to warrant a new trial. See *Lyons v. State*, 309 Ga. 15, 26 (843 SE2d 825) (2020) (assuming that trial court committed two evidentiary errors and that trial counsel was deficient in failing to object to evidence, the cumulative effect of the assumed deficiency and errors did not collectively result in harm to defendant). That is because Dobbins has not shown any prejudice caused by his counsel's failure to give sufficient notice of her intent to use Hines's

prior conviction, given that the trial court properly excluded that evidence on an alternative ground. As such, there is no prejudicial effect of that presumed deficiency to add to the effect of any presumed trial court error for not rebuking the prosecutor for making a single reference to Dobbins's "previous trial," which we have already determined would be harmless.

*Judgment affirmed. All the Justices concur.*

DECIDED JUNE 16, 2020.
Murder. Fulton Superior Court. Before Judge Ellerbe.
*Deborah L. Leslie*, for appellant.
*Paul L. Howard, Jr., District Attorney, Lyndsey H. Rudder, Mathew E. Plot, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Katherine D. Emerson, Assistant Attorney General*, for appellee.