## A10A2232. CARTER v. THE STATE.

(708 SE2d 595)

SMITH, Presiding Judge.

Brandon Levi Carter appeals from his convictions for possession of methamphetamine, manufacture of methamphetamine, and manufacture of methamphetamine with a child present. Carter contends he received ineffective assistance of counsel and that the trial court erred by denying his motion to suppress and failing to merge two of his convictions. For the reasons set forth below, we affirm in part and vacate in part.

> While the trial court's findings as to disputed facts in a ruling on a motion to suppress will be reviewed to determine whether the ruling was clearly erroneous, where the evidence is uncontroverted and no question regarding the credibility of witnesses is presented, the trial court's application of the law to undisputed facts is subject to de novo appellate review.

(Citations omitted.) *Vansant v. State*, 264 Ga. 319, 320 (1) (443 SE2d 474) (1994).

The record in this case shows that a police officer unsuccessfully attempted to execute an arrest warrant for Carter's brother at the home of their father. When the father told the officer that the brother was living at Carter's home, the officer went to Carter's home to attempt to serve the warrant. Carter and his wife acknowledged that the brother lived with them and informed the officer that he was out of town working and would not be back until the weekend. The officer informed them of the arrest warrant and asked them to tell the brother to turn himself in.

A week later,[1] the same officer, along with three other officers, went to Carter's home to try to arrest the brother.[2] The lead officer testified that he took other officers with him because he feared the brother "was going to run" and was "known to be a flight risk." The officers arrived between 4:00 and 5:00 a.m., and the lead officer told "two officers to go to the back."

When the officers knocked on the front door of Carter's home, he came to the door and gave nonverbal indications that his brother was in the home hiding in a closet. The officer then arrested the brother, and the officers secured the scene.

One of the officers who went to the back of the mobile home

---

[1] Friday, November 7, 2008.

[2] The officers were attempting to arrest the brother on a warrant charging him with probation violations in connection with a conviction for theft by receiving stolen property.

testified that he "went to the back door area, an escape route, because of the fact that he was known to try to flee." He testified that it was "routine" for one officer to go to the rear of a house to secure it and prevent "any flight attempt." He did not wait for the other officers to knock on the front door before going to the back of the mobile home.

As the officer was getting out of his car after parking it in the rear of the mobile home, he noticed "a strong chemical odor not commonly smelled around a household." The smell grew stronger as he approached the back door of the mobile home. He noticed a shed sitting next to the house with a light on, and the smell appeared to be coming from this shed. The officer then stepped "a little closer to the building" and saw that the door was ajar with "an inch to inch-and-a-half gap between the door and the door frame." When he looked through the partially open door, he saw a video monitoring the front of the mobile home and various items consistent with an active methamphetamine lab.

As soon as the officer realized there was an active methamphetamine lab, he went to the front of the mobile home, where he heard the other officers inside talking to Carter and his family. He informed the other officers about what he had discovered, and they evacuated the home based upon the dangers posed by a methamphetamine lab. The police then obtained a search warrant for the home and its outbuildings based upon the officer's affidavit averring that he "had occasion to observe an active, working methamphetamine lab in operation within plain view" while serving an arrest warrant.

The trial court orally denied Carter's motion to suppress based upon its conclusion that "it was not unreasonable for the officer to send one of the officers towards the back where there was a rear entrance." In a written order denying Carter's motion for new trial, the trial court found

> the evidence used to convict Defendant of drug offenses was not improperly obtained by the State. The evidence reflects that the officers came to the subject premises to execute a lawful arrest warrant for [the brother], and in executing that warrant the officers were authorized to station someone to prevent that subject from fleeing from the rear of the premises. What was perceived by the officer at the rear of the premises constituted probable cause to obtain a search warrant.

1. Carter contends the trial court erred by concluding as a matter of law that the officers had the right to be in the rear of his home when they executed the arrest warrant for his brother. We

disagree. "An arrest warrant . . . implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within." (Citations and punctuation omitted.) *Wall v. State*, 291 Ga. App. 278, 279 (661 SE2d 656) (2008). We find that this limited authority includes the right to enter the back yard of the home to prevent any attempted escape through the rear. Because the record in this case demonstrates that the brother lived with Carter and that he would be present in the home when the officers returned to serve the arrest warrant, the trial court did not err when it concluded that the police were authorized to enter the back yard of the premises and look into the open door of the shed. See id. (officers entitled to enter home of defendant to serve arrest warrant for another who also lived there); *Reed v. State*, 163 Ga. App. 233, 234 (293 SE2d 469) (1982) (officer entitled to enter storage room to look for defendant when serving arrest warrant at defendant's residence).[3]

We find no merit in Carter's contention that the United States Supreme Court's decision in *Steagald v. United States*, 451 U. S. 204 (101 SC 1642, 68 LE2d 38) (1981), applies to this case. In *Steagald*, the United States Supreme Court held that police cannot enter a third party's home to execute an arrest warrant for another person without a search warrant, consent, or exigent circumstances. 451 U. S. at 213-214 (III). In *Steagald*, however, there was no evidence that the subject of the arrest warrant resided in the third party's home, as there is in this case. For this same reason, other cases upon which Carter relies are also distinguishable. See, e.g., *State v. Gravitt*, 289 Ga. App. 868, 870 (2) (a) (658 SE2d 424) (2008) (upholding trial court's finding that police improperly entered curtilage of third party's home to arrest another who did not reside there); *Leon-Velazquez v. State*, 269 Ga. App. 760, 761-762 (1) (605 SE2d 400) (2004) (absent exigent circumstances, officer could not step into third party's home while serving an arrest warrant on nonresident); *State v. Schwartz*, 261 Ga. App. 742, 743-745 (1) (583 SE2d 573) (2003) (upholding trial court's finding that officer could not peer through window of third party's home while serving arrest warrant on nonresident).

Carter also relies upon cases in which the police had no warrant of any kind. See *Kirsche v. State*, 271 Ga. App. 729 (611 SE2d 64)

---

[3] Although Carter does not contend the officers violated the "knock-and-announce" rule by entering the back yard when serving the arrest warrant, "we note that the Supreme Court of the United States has held that the Fourth Amendment does not require the suppression of all evidence found in a search in which the 'knock-and-announce' rule was violated. *Hudson v. Michigan*, 547 U. S. 586 (III) (126 [SC] 2159, 165 LE2d 56) (2006)." *Fair v. State*, 284 Ga. 165, 173 (3) (c) (664 SE2d 227) (2008).

(2005) (officers investigating domestic complaint could not enter back yard for routine security reasons without consent or exigent circumstances and without first knocking on front door); *Morgan v. State*, 285 Ga. App. 254, 257-258 (1) (a) (645 SE2d 745) (2007) (officer responding to concerned citizen's call could not enter back yard without a warrant in absence of consent or exigent circumstances). These cases are inapposite because the police in this case obtained a warrant for the arrest of the defendant and executed it at his place of residence.

While Carter also argues that the police entered his back yard as a pretext to search for a methamphetamine lab, the trial court made a factual finding that the officers had no such intention. "The trial court is entitled to weigh the credibility of witnesses and make its finding of fact, and we review this finding under a clearly erroneous standard." (Citation omitted.) *Grier v. State*, 266 Ga. 170, 172 (2) (a) (465 SE2d 655) (1996). Based upon conflicting evidence as to whether the officer who discovered the methamphetamine lab knew that there had been a previous report of a methamphetamine lab in the shed of this home, as well as the lead officer's denial that he went to the home to search for it, we conclude that the trial court's finding was not clearly erroneous. Id.

For these reasons, we affirm the trial court's denial of Carter's motion to suppress.

2. Based upon the State's forthright concession that the same facts were used to prove both the possession of methamphetamine count and the manufacture of methamphetamine count, we vacate the trial court's sentence with regard to the possession count and remand this case to the trial court to correct the sentence. See *Snoke v. State*, 237 Ga. App. 686, 688-689 (3) (516 SE2d 541) (1999).

3. In his remaining enumeration of error, Carter contends he received ineffective assistance of counsel because his counsel (a) failed to request material and relevant jury instructions and (b) elicited testimony that Carter's wife pled guilty.

To succeed on an ineffective assistance claim, a criminal defendant must demonstrate both that his trial counsel's performance was deficient and that there is a reasonable probability that the trial result would have been different if not for the deficient performance. *Miller v. State*, 285 Ga. 285, 285-287 (676 SE2d 173) (2009). "A trial court's finding that a defendant has not been denied effective assistance of trial counsel will be affirmed unless clearly erroneous." (Citations and punctuation omitted.) *Scapin v. State*, 204 Ga. App. 725 (420 SE2d 385) (1992).

(a) Carter asserts his trial counsel should have asked for charges on mere presence, mere approval without more, mere association, and grave suspicion because the State's case centered on the theory

that Carter was a "party to a crime." We disagree.

The record shows that in addition to the party to a crime charge, the trial court also instructed the jury on the State's burden to prove each element of the offense beyond a reasonable doubt, intent, circumstantial evidence, the presumption of innocence, and actual and constructive possession. Viewed as a whole, these charges "informed the jury of the State's need to prove [Carter] guilty beyond a reasonable doubt, as well as the type of evidence that can satisfy this burden of proof." *New v. State*, 270 Ga. App. 341, 345 (2) (a) (606 SE2d 865) (2004). Additionally, the mere presence and mere association charges are simply corollaries of the requirement that the State prove each element of the crime beyond a reasonable doubt and are adequately covered by this charge. *Whiting v. State*, 269 Ga. 750, 752 (2) (a) (506 SE2d 846) (1998); *Roberts v. State*, 223 Ga. App. 167, 168 (4) (477 SE2d 345) (1996). Based upon all of the instructions given by the trial court, we find no reasonable probability that the additional instructions would have produced a different outcome at trial. See *Butts v. State*, 273 Ga. 760, 768 (18) (546 SE2d 472) (2001); *New*, supra, 270 Ga. App. at 345 (2) (a); *Palmer v. State*, 294 Ga. App. 85, 88-89 (3) (668 SE2d 523) (2008). Therefore, the trial court did not err by denying this portion of Carter's ineffective assistance claim.

(b) Carter claims his trial counsel "introduced profound harm and prejudice into this case" when counsel asked his ex-wife about her sentence of five years probation for pleading guilty to possessing methamphetamine. Trial counsel testified that he believed he did so as part of a trial strategy to discredit her testimony and show that she has a self-serving reason to testify falsely and get a lesser sentence. He also testified that her testimony on direct had harmed his client's case. The record shows that Carter and his wife divorced and that she provided evidence showing Carter had been around the shed with his brother the afternoon before they were arrested.

Based upon the particular facts of this case, we conclude that counsel's trial strategy did not amount to ineffective assistance of counsel. See *Smith v. State*, 304 Ga. App. 155-156 (3) (a) (695 SE2d 679) (2010) ("matters of tactics and strategy, whether wise or unwise, do not amount to ineffective assistance of counsel") (citations, punctuation and footnote omitted).

*Judgment affirmed in part and vacated in part. Mikell and Adams, JJ., concur.*

DECIDED MARCH 23, 2011 — ■

*Grayson P. Lane*, for appellant.

*Stephen D. Kelley, District Attorney, Jan Kennedy, Assistant District Attorney*, for appellee.