295 Ga. 190
FINAL COPY

S14A0168.  GEIGER v. THE STATE.

BENHAM, Justice.

Appellant Richard Geiger was sentenced to life imprisonment for his conviction for the felony murder of his live-in girlfriend, predicated upon aggravated assault by stabbing, plus five years to serve consecutively for possession of a knife during the commission of a felony.[1]  He appeals on the ground that his arrest on his mother's property, along with evidence seized at the time of his arrest and statements made as a result of his arrest, should have been suppressed.  He also complains that prosecutorial misconduct required a mistrial.   For the reasons set forth below, we affirm.

  1.  Viewed in the light most favorable to the verdict, the evidence

---

[1] The crime occurred on March 6, 2007, and the Liberty County grand jury returned an indictment on September 13, 2007, charging appellant with malice murder, felony murder (aggravated assault by stabbing the victim with a knife), aggravated assault, and possession of a knife during the commission of a felony.  Appellant was tried May 6 and 7, 2010, and the jury found him not guilty of malice murder but guilty of the other crimes charged.  The trial court sentenced appellant to life in prison for the felony murder conviction, to confinement for twenty years to be served concurrently for the aggravated assault, and to confinement for a period of five years to be served consecutively to the other sentences for the possession conviction.  On May 28, 2010, appellant filed a motion for new trial which was later amended.  After a hearing, the trial court denied appellant's motion for new trial by order entered June 24, 2013.  Appellant filed a timely notice of appeal on July 1, 2013, and the case was docketed in this Court to the January 2014 term for a decision to be made on the briefs.

presented at trial showed appellant lived with his girlfriend, victim Rosie Lee Smith, at her apartment in Liberty County. She was married but had been living apart from her husband, Larry Smith, for many years. On March 6, 2007, Mr. Smith traveled from out of town to visit his wife at her residence. Upon receiving notice that her husband was coming to visit, Mrs. Smith asked appellant to pack his belongings and leave. While appellant was packing, he pulled a concealed knife out of his sleeve and stabbed Mrs. Smith in the chest, and she died at the scene. Mr. Smith was at the apartment when he heard a thump and saw appellant running from the apartment. He found Mrs. Smith sitting on the floor of the hallway closet with a stab wound and not moving. That night, appellant admitted to a friend that he had stabbed Mrs. Smith, and he ran off upon learning she had died. Two days later, law enforcement obtained an arrest warrant for appellant and, based on information he had been seen at his mother's house, they drove to her Bulloch County home. As law enforcement officers were pulling onto the mother's property, they observed appellant crossing a cotton field behind the home and they took him into custody. Appellant waived his rights, made a full confession, admitted he disposed of the knife he used to stab the victim, and told officers of its location.

2

Authorities recovered the knife and submitted it to the GBI for testing. Blood found on the knife matched that of Mrs. Smith. Appellant testified at trial and stated he went to Mrs. Smith's apartment on the day she was killed with a knife concealed in his clothing. He admitted that he stabbed her with the intent to hurt her because he was upset that she was making him leave, but stated he did not intend to kill her. The evidence as described above was sufficient to authorize a rational jury to find appellant guilty beyond a reasonable doubt of felony murder. See *Jackson v. Virginia*, 443 U. S. 307, 319 (99 SCt 2781, 61 LE2d 560) (1979).[2]

2. The arresting officers obtained a warrant for appellant's arrest, had reason to believe he was at his mother's house, and were prepared to take him into custody there if an arrest could be made. Appellant asserts, however, that the warrantless entry onto his mother's property to execute the arrest warrant was illegal, and thus the trial court erred by denying his motion to suppress his arrest, the evidence seized pursuant to his arrest, and the statements he made

---

[2] As set forth in footnote 1, the trial court imposed a sentence of twenty years for the aggravated assault conviction to be served concurrently with the life sentence for the felony murder conviction. The conviction for aggravated assault merged as a matter of fact with the conviction for felony murder, however, and thus the sentence for the aggravated assault conviction is vacated. See OCGA § 16-1-7 (a); *Nazario v. State*, 293 Ga. 480 (746 SE2d 109) (2013).

upon his arrest. Appellant makes no argument, nor could he, that merely entering onto his mother's property to knock and inquire of his whereabouts required the authorities first to obtain a search warrant. Instead, his argument is based upon appellant's assumption that he was wrongly apprehended within the curtilage of his mother's home without a search warrant. In his motion to suppress, citing *Minnesota v. Olson*, 495 U. S. 91 (II) (110 SCt 1684, 109 LE2d 85) (1990), appellant asserted he had standing to challenge the search. But in *Olsen*, the United States Supreme Court held that the warrantless arrest of a suspect after a warrantless entry into the home in which he was staying violated the suspect's Fourth Amendment rights, where neither consent to enter the home nor exigent circumstances to justify a warrantless entry were shown. In this case, however, the arresting officers had obtained a warrant for appellant's arrest. Assuming appellant was living at his mother's home, then the arrest warrant authorized entry to make the arrest. See *Payton v. New York*, 445 U. S. 573, 603 (100 SCt 1371, 63 LE2d 639) (1980) ("[F]or Fourth Amendment purposes, an arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within."); *United States v. Bervaldi*, 226 F3d

4

1256, 1262-1263 (II) (11th Cir. 2000); *Carter v. State*, 308 Ga. App. 686, 687-688 (1) (708 SE2d 595) (2011). If, on the other hand, appellant was not living in his mother's home and was simply present or visiting there, he had no standing to complain about a warrantless entry into the house or its curtilage, as only those living in the home could challenge such a search. See *Steagald v. United States*, 451 U. S. 204, 213-214 (101 SCt 1642, 68 LE2d 38) (1981) (holding, in a challenge raised by a resident, that the police cannot enter a home to execute an arrest warrant for a person not living there without a search warrant, consent, or exigent circumstances). In either event, the evidence presented at the motion to suppress hearing showed appellant was in plain view of the officers who arrived at his mother's residence for the lawful purpose of determining whether he was present, and he was apprehended in the proverbial "open field." Several marked cars arrived at the residence at or about the same time and one or more of the cars drove to the rear of the residence to secure it while other officers planned to knock on the front door. The undisputed testimony presented at the motion to suppress hearing established that even the officers who drove to the front of the property to knock on the front door could see appellant walking across the field near the house as their vehicles

5

approached the house. For that reason, the officers drove their vehicles directly to the field to prevent appellant from attempting to escape and to arrest him. Applying a "clearly erroneous" standard of review, we find no error in the trial court's findings of fact with respect to appellant's motion to suppress. See *Miller v. State*, 288 Ga. 286, 286-287 (1) (702 SE2d 888) (2010).

The United States Supreme Court has reaffirmed "that no expectation of privacy legitimately attaches to open fields." *Oliver v. United States*, 466 U. S. 170, 180 (III) (A) (104 SCt 1735, 80 LE2d 214) (1984) (finding no Fourth Amendment violation when law enforcement officers, acting on a tip, arrived at petitioner's farm, drove past the house to a locked gate with a "no trespassing" sign, walked around the gate to a footpath, and ultimately found a field of marijuana in a highly secluded field on the property). That this open field was behind the house and near a shed at the rear of the house does not establish it was within the curtilage for purposes of Fourth Amendment protection, even if appellant had standing to assert search protection. "At common law, the curtilage is the area to which extends the intimate activity associated with the sanctity of [the occupants'] home and the privacies of life." (Citation and punctuation omitted.) Id. at 180. A cotton field behind a house which is visible

6

from the road cannot reasonably be deemed to be intimately associated with the privacies of life in the home. Even an area that is within the curtilage does not provide constitutional protection for activities that are conducted within plain view of police observation. See *California v. Ciraolo*, 476 U. S. 207, 213 (II) (106 SCt 1809, 90 LE2d 210) (1986). Appellant had no reasonable expectation of privacy when walking across an open field in view of the road. Accordingly, the trial court did not err in denying appellant's motion to suppress his arrest or any evidence seized during the arrest.

3. On cross-examination, the prosecutor directed appellant's attention to the custodial statement he made to the arresting officers, which had been played to the jury, that "he could never harm anybody." The prosecutor then asked appellant whether it was true, however, that the day before Mrs. Smith's death he had pulled a knife on a man that was her ex-boyfriend. The state had not laid a proper foundation for presenting similar transaction evidence, and appellant's attorney objected and moved for mistrial on the ground that reference to this alleged incident improperly placed appellant's character into evidence. During a conference outside the presence of the jury, the trial court instructed the prosecutor to stay away from this evidence but denied the motion for mistrial.

7

The trial court then instructed the jury to disregard the previous comment by the prosecutor and ordered it to be stricken. The prosecutor then commenced questioning appellant about whether his previous girlfriend had also asked him to leave and asked whether his leaving was related to "something about her stabbing you with a screwdriver?" Again, appellant's counsel objected and requested a mistrial. Outside the hearing of the jury, the trial court strongly rebuked the prosecutor and instructed him to stay away from that kind of evidence, but denied the motion for mistrial. Appellant's counsel renewed the motion for mistrial which again was denied, but, alternatively, counsel asked for curative instructions. When the jury returned, no curative instructions were given. Although appellant's enumeration of error asserts the trial court erred by failing to grant a mistrial for prosecutorial misconduct, he does not argue entitlement to a mistrial in his brief, but argues the trial court's failure to give curative instructions and to rebuke counsel in the presence of the jury created reversible error.[3]

With respect to the first prosecutorial statement to which appellant raised

---

[3] Appellant has abandoned his argument regarding the trial court's denial of motion for mistrial and therefore it will not be addressed.

an objection, we agree that the record demonstrates the prosecutor violated OCGA § 17-8-75 by making "statements of prejudicial matters which [were] not in evidence . . . ." For the purpose of this analysis we will assume, without deciding, that the second prosecutorial statement to which appellant raised an objection, which referenced that the appellant, himself, was a victim of an assault, was also an improper prejudicial statement by the prosecutor. Accordingly, it was "the duty of the court to interpose and prevent the same." Id. Further, "[o]n objection made, the court shall also rebuke the counsel and by all needful and proper instructions to the jury endeavor to remove the improper impression from their minds; or, in his discretion, he may order a mistrial if the prosecuting attorney is the offender." Id. Once a defendant's counsel has raised an objection, OCGA § 17-8-75 imposes a duty upon the trial court "to rebuke the prosecutor, give an appropriate curative instruction, or grant a mistrial in the event that the prosecutor has injected into the case prejudicial statements on matters outside of the evidence." *O'Neal v. State*, 288 Ga. 219, 221 (1) (702 SE2d 288) (2010). Contrary to the state's argument, once an objection has been raised, a defendant does not waive appellate review of the trial court's failure to rebuke a prosecutor or give a curative instruction by

9

failing to request a specific remedy.  Id.

In this case, however, the trial court's error in failing to remedy the impact of the prejudicial statements by the prosecutor, if any, was harmless.  Given the overwhelming evidence of appellant's guilt, including his custodial confession, we find it is highly probable that the trial court's error, if any, did not contribute to the verdict.  See *O'Neal*, 288 Ga. at 222 (2) (applying a harmless error analysis to the issue of the trial court's failure to comply with the duty imposed by OCGA § 17-9-75).  Consequently, we find no reversible error.

<u>Judgment affirmed and sentence vacated in part.  All the Justices concur.</u>

Decided May 19, 2014.

Murder. Liberty Superior Court. Before Judge Stewart.

T. Mack Taylor, for appellant.

Tom Durden, District Attorney, Melissa L. Poole, Russell B. Mabrey, Jr., Assistant District Attorneys, Samuel S. Olens, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Andrew G. Sims, Assistant Attorney General, for appellee.