## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jun 05 2020, 10:48 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Ivan A. Arnaez
Arnaez Law Offices
Evansville, Indiana

ATTORNEY FOR APPELLEE

Caroline G. Templeton
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Kurtis R. Hall, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | June 5, 2020 <br><br> Court of Appeals Case No. 19A-CR-2941 <br><br> Appeal from the Gibson Circuit Court <br><br> The Honorable Jeffrey F. Meade, Judge <br><br> Trial Court Cause No. 26C01-1810-F4-1121 |

**Najam, Judge.**

## Statement of the Case

[1]   Kurtis Hall appeals his convictions, following a jury trial, for unlawful possession of a firearm by a serious violent felon, a Level 4 felony, and auto

theft, as a Level 6 felony, and his adjudication as a habitual offender. Hall presents six issues for our review, which we consolidate and restate as the following four issues:

1.     Whether the trial court erred when it admitted into evidence at trial firearms that officers had found in his house and in his truck.

2.     Whether the trial court abused its discretion when it admitted alleged hearsay evidence at trial.

3.     Whether the trial court abused its discretion when it denied his motion for a mistrial.

4.     Whether the State presented sufficient evidence to prove that he was a habitual offender.

[2]     We affirm.

## Facts and Procedural History

[3]     On October 2, 2018, a 2002 Harley Davidson Softail motorcycle ("the motorcycle") owned by Larry Jenkins was stolen from Jenkins' residence in Evansville. Jenkins was not home at the time, but Jenkins' neighbor Jada McKnight saw a man loading the motorcycle onto a trailer, and she surreptitiously photographed the scene. McKnight was able to record the license plate number on the man's truck. McKnight then called law enforcement to report the apparent theft. When Jenkins returned home, he talked to McKnight and concluded that Hall, an acquaintance, was the man

who had stolen the motorcycle. Jenkins reported his suspicion to law enforcement.

[4] On October 3, officers with the Indiana State Police ("ISP") set out to execute an arrest warrant for Hall on charges unrelated to the motorcycle theft. When a surveillance team saw Hall "drive up the road, park his truck in the driveway, get out of his truck, and enter the home" in Gibson County, the team notified ISP Trooper Ross Rafferty, who was waiting nearby. Tr. Vol. 2 at 229. Trooper Rafferty, along with other ISP officers, including members of the U.S. Marshal's Task Force, soon arrived at Hall's home. The officers had reason to believe that Hall possessed firearms. Rather than knocking on the front door to the house, Trooper Justin Bean called out to Hall on a PA system "to alert [him] to [their] presence," and he instructed Hall to exit the house. *Id.* at 231. After several minutes, Hall came outside, and officers arrested him.

[5] The officers then conducted a protective sweep inside Hall's house, and they saw two rifles in plain view in the master bedroom. In the meantime, Trooper Rafferty and Trooper Bean looked inside the green pickup truck Hall was driving when he arrived home that day. In plain view through a truck window, they saw the butt of a pistol stuck between the front seats. Officers also found a motorcycle on the property matching the description of Jenkins' stolen motorcycle.

[6] Officers then obtained a search warrant for Hall's home, outbuildings, and vehicles. When they executed that search warrant, officers found a long rifle

and a pellet gun in the master bedroom and a loaded 9-millimeter caliber pistol in his pickup truck. Officers also confirmed that the motorcycle parked on the property was Jenkins' stolen motorcycle.

[7] The State charged Hall with possession of a firearm by a serious violent felon, a Level 4 felony, and auto theft, as a Level 6 felony. The State subsequently charged Hall with being a habitual offender. Prior to trial, Hall filed a motion to suppress all of the evidence officers collected pursuant to the search warrant, which they had obtained after conducting the protective sweep of his home. The court denied that motion following a hearing.

[8] During his jury trial,[1] Hall testified that he had purchased the motorcycle from Jenkins on October 2, 2018, and he submitted into evidence a receipt for the motorcycle purporting to show Jenkins' signature. However, Jenkins testified that he did not sell the motorcycle to Hall; Jenkins testified that Hall stole the motorcycle. A jury subsequently found Hall guilty as charged and adjudicated him to be a habitual offender. The trial court entered judgment of conviction accordingly and sentenced Hall to an aggregate term of eleven and one-half years executed. This appeal ensued.

---

[1] The jury trial was trifurcated—the theft, possession of a firearm, and habitual offender charges were each tried separately.

# Discussion and Decision

## *Issue One:  Firearms*

[9]     Hall first contends that the trial court erred when it admitted into evidence two firearms officers recovered from his property:  one inside his truck, and the second one inside his house.  He asserts that the officers violated his rights under the Fourth Amendment to the United States Constitution when they looked inside his truck and saw a firearm in plain view.  And he maintains that the officers' protective sweep of his residence and the subsequent search pursuant to a warrant violated his rights under the Fourth Amendment.  We address each contention in turn.

[10]    Our standard of review is well settled:

> Admission of evidence is generally left to the discretion of the trial court, and thus we review admissibility challenges for abuse of that discretion.  *Guilmette v. State*, 14 N.E.3d 38, 40 (Ind. 2014).  When, however, admissibility turns on questions of constitutionality relating to the search and seizure of that evidence, our review is de novo.  *Id.* at 40-41.

*Jacobs v. State*, 76 N.E.3d 846, 849 (Ind. 2017).

[11]    Hall first maintains that the officers violated his rights under the Fourth Amendment because they were "on the curtilage" of his property without a search warrant when they saw the gun in plain view in his truck.  Appellant's Br. at 37.  Hall is correct that "[w]hen a law enforcement officer physically intrudes on the curtilage to gather evidence, a search within the meaning of the

Fourth Amendment has occurred." *Collins v. Virginia*, 138 S. Ct. 1663, 1670 (2018). "Such conduct thus is presumptively unreasonable absent a warrant." *Id.*

[12] However, Hall ignores the fact that the officers were legally present on his property, including the curtilage of his property, because they were executing an arrest warrant. As this Court has observed, officers executing an arrest warrant have "authority to actually enter the residence, [as well as] authority to walk around the curtilage. Once properly on the curtilage, the officers could notice things in plain view, such as through [a] partially uncovered window." *Carpenter v. State*, 974 N.E.2d 569, 573 (Ind. Ct. App. 2012), *trans. denied*. Trooper Rafferty testified that he parked his vehicle "directly behind" Hall's truck, and Trooper Bean parked next to Trooper Rafferty. Tr. Vol. 2 at 230. In plain view through a truck window, both Trooper Rafferty and Trooper Bean saw a gun wedged between the front two seats. Accordingly, the trial court did not err when it admitted that gun into evidence.

[13] Turning now to Hall's contention that the trial court erred when it admitted into evidence a second firearm officers found inside his house, we agree with the State that the error, if any, in the admission of that evidence was harmless. It is well settled that the admission of evidence obtained in violation of the Fourth Amendment is subject to a harmless error analysis. *Zanders v. State*, 118 N.E.3d 736, 743 (Ind. 2019). As our Supreme Court has explained,

> [f]or these errors, "an otherwise valid conviction should not be set aside if the reviewing court may confidently say, on the whole

record, that the constitutional error was harmless beyond a reasonable doubt." *Delaware v. Van Arsdall*, 475 U.S. 673, 681, 106 S. Ct. 1431 (1986). Put another way, the question is, "Is it clear beyond a reasonable doubt that . . . [the] jury would have found the defendant guilty absent the error?" *Neder v. United States*, 527 U.S. 1, 18, 119 S. Ct. 1827, 144 L.Ed.2d 35 (1999).

\* \* \*

. . . [H]armless-error analysis involves quantitatively and qualitatively assessing the error in the context of other evidence presented. *See* [*Van Arsdall*,] at 684. . . . This analysis requires us to first identify the allegedly improper evidence, then evaluate its significance in view of all the other evidence that was properly presented. *See, e.g., United States v. Hasting*, 461 U.S. 499, 510-12, 103 S. Ct. 1974, 76 L.Ed.2d 96 (1983); *United States v. Watts*, 453 F. App'x 309, 312-14 (4th Cir. 2011); *United States v. Tenerelli*, 614 F.3d 764, 769-70 (8th Cir. 2010).

*Id.* at 743-44.

[14] The State charged Hall with the unlawful possession of a single firearm, but the information did not specify whether it was Hall's possession of the firearm officers found in his truck or in his house. And at trial, the State did not specify which of the two firearms admitted into evidence was meant to support that charge. We hold that, even assuming error in the admission into evidence of the rifle found in Hall's house, it is clear beyond a reasonable doubt that the

jury would have found Hall guilty absent the alleged error.[2] *Zanders*, 118 N.E.3d at 741. The State presented testimony that Hall was alone in his green pickup truck when he drove up to his house immediately prior to the officers' arrival. Hall constructively possessed the gun officers saw in plain view between the front seats of the truck. *See Grim v. State*, 797 N.E.2d 825, 831 (Ind. Ct. App. 2003). Any error in the admission into evidence of the rifle officers found inside Hall's house was harmless.

### Issue Two: Alleged Hearsay

Hall next contends that the trial court abused its discretion when it permitted Trooper Rafferty to testify that Jenkins was in the Vanderburgh County Jail at the time Hall alleged he had bought the motorcycle from him. During a side bar, the State revealed that Trooper Rafferty did not have first-hand knowledge that Jenkins was in jail that day but had discovered that fact after checking an online database. Hall objected to the evidence on hearsay grounds, but the trial court overruled the objection and allowed the testimony. On appeal, Hall maintains that, contrary to the State's argument to the trial court, the evidence

---

[2] Hall did not file a reply brief and does not, therefore, challenge the State on its harmless error argument. Hall has waived any contention that, absent the State's designation of a particular gun to support the charge, there is no guarantee that the jury's verdict was unanimous. *See Scuro v. State*, 849 N.E.2d 682, 687-88 (Ind. Ct. App. 2006) (holding defendant waived contention that verdict may not have been unanimous where State presented evidence of two drug deals in the same day but only charged him with one), *trans. denied*. In any event, officers saw Hall alone in his truck shortly before they saw a gun in plain view in the truck. The rifle officers found inside the house was in a bedroom Hall shared with his wife. We hold that any error in the admission of the rifle was harmless beyond a reasonable doubt.

was not admissible under the business records exception in Evidence Rule 803(6).

[16] We need not address Hall's contention on the merits because the "improper admission of evidence is harmless error when the erroneously admitted evidence is merely cumulative of other evidence before the trier of fact." *Hunter v. State*, 72 N.E.3d 928, 932 (Ind. Ct. App. 2017), *trans. denied*. Whether Jenkins was in jail on October 2, 2018, is irrelevant to the issues at trial other than to prove that Jenkins was not home at the time Hall stole the motorcycle. And Trooper Rafferty's testimony that Jenkins was not home was merely cumulative of Jenkins' own testimony that he was not home when Hall stole his motorcycle. Accordingly, any error in the admission of Trooper Rafferty's testimony on this issue was harmless. *See Zanders*, 118 N.E.3d at 741.

### Issue Three:  Mistrial

[17] Hall next contends that the trial court abused its discretion when it denied his motion for a mistrial. During its cross-examination of Hall at trial, the State asked Hall about prior convictions in an effort to impeach him. Specifically, the State asked Hall whether he had "a conviction [sic] in Madison County for burglary and theft." Tr. Vol. 3 at 85. Hall did not object and answered in the affirmative. The State then asked Hall whether he also had convictions for residential burglary in Illinois and for burglary and theft in Hendricks County. Hall did not answer but objected to both of those questions on the basis that evidence of those convictions was inadmissible under Evidence Rule 609. Hall requested an admonishment and moved for a mistrial.

[18] The trial court denied the motion for mistrial but admonished the jury as follows:

> You heard prior to the break, a couple of prior convictions, okay, allegedly of the Defendant. I'm going to admonish that you only give weight to one, and that was one out of Madison . . . County, okay? Anything else, I'm going to ask that you completely disregard. Regarding the one conviction out of Madison County, I also want to advise the jury and admonish them that you can't use that as any evidence that the Defendant committed what he's been charged with. This only goes to his credibility. Okay?

*Id.* at 93.

[19] "Because the trial court is best positioned to assess the circumstances of an error and its probable impact on the jury, '[t]he denial of a mistrial lies within the sound discretion of the trial court,' and this Court reviews only for abuse of that discretion." *Lucio v. State*, 907 N.E.2d 1008, 1010 (Ind. 2009) (quoting *Gill v. State*, 730 N.E.2d 709, 712 (Ind. 2000)). "The overriding concern is whether the defendant 'was so prejudiced that he was placed in a position of grave peril.'" *Id.* (quoting *Gill*, 730 N.E.2d at 712)). The gravity of peril is measured by the probable persuasive effect of the misconduct on the jury's decision, not on the degree of impropriety of the conduct. *Coleman v. State*, 750 N.E.2d 370, 374 (Ind. 2001) (internal citations omitted).

[20] Hall maintains that he was entitled to a mistrial "because the State's harpoon deprived Mr. Hall of a fair trial." Appellant's Br. at 41. He points out that his credibility was a crucial issue at trial, and that the State's reference to three

convictions by its questions unfairly impeached him. However, Hall acknowledged, without objection, his prior convictions for burglary and theft. In that context, and given the other independent evidence that Hall was lying about having bought the motorcycle, including Jenkins' testimony, we cannot say that Hall was so prejudiced by the questions that he was placed in a position of grave peril. Moreover, it is well settled that, "where the trial court adequately admonishes the jury, such admonishment is presumed to cure any error that may have occurred." *Johnson v. State*, 901 N.E.2d 1168, 1173 (Ind. Ct. App. 2009). We hold that the trial court did not abuse its discretion when it denied Hall's motion for a mistrial.

### Issue Four: Habitual Offender Adjudication

[21] Finally, Hall contends that the State presented insufficient evidence to prove that he was a habitual offender. Upon a challenge to the sufficiency of the evidence for a habitual offender determination, the appellate court neither reweighs the evidence nor judges the credibility of the witnesses; rather, we examine only the evidence most favorable to the judgment, together with all of the reasonable and logical inferences to be drawn therefrom. *Woods v. State*, 939 N.E.2d 676, 677 (Ind. Ct. App. 2010), *trans. denied*. The habitual offender determination will be sustained on appeal so long as there is substantial evidence of probative value supporting the judgment. *Id.*

[22] A person is a habitual offender if the State proves beyond a reasonable doubt that he has two prior, unrelated felony convictions. Ind. Code § 35-50-2-8(g) (2019). To support a habitual offender finding, (1) the second prior unrelated

felony must be committed after sentencing for the first prior unrelated felony conviction; and (2) the offense for which the State seeks to have the person sentenced as a habitual offender must be committed after sentencing for the second prior unrelated felony conviction. I.C. § 35-50-2-8(c).

[23] Hall asserts that the State presented sufficient evidence to support two prior unrelated felonies, but not three. In particular, he maintains that the evidence was insufficient to prove a third prior unrelated felony in Marion County. Hall points out that, while State's Exhibit 26 shows his name, race, date of birth, and driver's license number, it does not include fingerprints or a photo, and no one testified that he was the same Kurtis Hall who pleaded guilty to burglary, as a Class C felony, in Marion County in 1992. Hall avers that the State had to do more to establish that he was the same Kurtis Hall named in Exhibit 26. We cannot agree.

[24] Again, Hall concedes that he is the same Kurtis Hall named in the documents in State's Exhibits 24, 25, and 27 showing that he committed two prior felonies, one in Madison County and one in Hancock County. Exhibit 26 includes Hall's name, race, gender, and date of birth, and that information matches the same identifiers listed in the documents supporting the other two felony convictions. This Court has held that these identifiers are sufficient to prove a defendant's habitual offender status. *See Parks v. State*, 921 N.E.2d 826, 834 (Ind. Ct. App. 2010) (holding documentation listing defendant's name and birthdate sufficient to prove defendant was the same person who committed a

previous felony), *trans. denied*.  The State presented sufficient evidence to support Hall's adjudication as a habitual offender.

[25]     Affirmed.


Kirsch, J., and Brown, J., concur.